# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN J. COLL, III<br>20 Gilmore Rd.<br>Ewing, NJ 08628 | **CIVIL ACTION** |
| Plaintiff,<br>v. | **No.:** |
| IM PRACTICES, INC. d/b/a JOMSON STAFFING SERVICES & RAVEN LOGISTICS<br>4390 US Highway One<br>Ste. 203<br>Princeton, NJ 08540<br>and<br>SAURABH AGARWAL<br>4390 US Highway One<br>Ste. 203<br>Princeton, NJ 08540 | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CIVIL ACTION COMPLAINT

Plaintiff, John J. Coll, III (*hereinafter* referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by IM Practices, Inc *d/b/a* Jomson Staffing Services and Raven Logistics and Saurabh Agarwal (*hereinafter* collectively referred to as "Defendants," unless indicated otherwise) of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201 *et. seq.*), the New Jersey Wage Payment Law(s) ("NJ WPL" - N.J.S.A. §§ 34:11-4.1 – 34:11-33), and the New Jersey Wage and Hour Law ("NJ WHL" – N.J.S.A. §§ 34:11-56a, *et seq.*). Plaintiff was not properly paid wages (including overtime

wages) mandated by state and federal law(s). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant IM Practices, Inc. (*hereinafter* "Defendant Entity") is a staffing franchise company headquartered at the above-caption address that provides both staffing and franchising opportunities throughout the United States.

8. Defendant Saurabh Agarwal (*hereinafter* "Defendant Agarwal") owns and operates Defendant Entity and is a high level manager who controls and manages the terms and conditions of employment for employees (including Plaintiff), including but not limited to compensation.

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein as if set forth in full.

11. Plaintiff began employment with Defendants in or about March of 2018.

12. Plaintiff has been out of work on a medical leave of absence since January 31, 2019 and therefore not physically performing work for Defendants at the current moment.

13. Since being hired by Defendants, Plaintiff's paycheck has identified that he is employed and paid by Defendant Entity d/b/a Jomson Staffing Services.

14. At the time of his hire with Defendants and for approximately seven months thereafter, Plaintiff was employed with Defendants as an outside salesman.

15. As an outside salesman, Plaintiff was promised by Defendants that he would be paid $20.00 per hour in addition to various commissions, including:

- New Staffing Client Origination Fees (one-time): $500
- Staffing Sales (half desk): 5%
- Staffing Sales & Recruiting: 7%
- Jomson Subcontracting Affiliate Program (JSAP) Fees: 5%

16. This aforesaid wage agreement between Defendants and Plaintiff was made verbally and memorialized in writing.

17. While employed with Defendants as an outside salesman, Plaintiff worked approximately 40 hours per week.

18. For the first approximate eight (8) weeks of employment, Defendants operated under the aforesaid agreement/promise (as discussed in Paragraph 15 of this Complaint).

19. For example, for the first approximate eight weeks of his employment with Defendant, Plaintiff's paychecks reflected that he was being paid for 40 hours at a rate of $20.00 per hour (equating to $800.00 per week), with the type of pay being labeled as "Reg" (or Regular).

20. However, after pay period ending May 6, 2018, Plaintiff's weekly pay began to fluctuate and Defendant began to refuse to pay Plaintiff the wages due and owed to him for the remainder of his employment as an outside salesman. For example:

  i. On May 18, 2018 (for the pay period ending May 13, 2018), Plaintiff was only paid $39.85, with the type of pay being labeled on his paycheck as "Expenses";

  ii. On May 25, 2018 (for the pay period ending May 20, 2018), Plaintiff was only paid $75.00, with the type of pay being labeled on his paycheck as "ComRC;"

  iii. On June 1, 2018 (for the pay period ending May 27, 2018), Plaintiff was only paid $30.00, with the type of pay being labeled on his paycheck as "Expenses";

  iv. On July 13, 2018 (for the pay period ending July 8, 2018), Plaintiff was only paid $190.20, with the type of pay being labeled on his paycheck as "ComSA";

  v. On September 28, 2018 (for the pay period ending September 23, 2018), Plaintiff was paid $400.00, with the type of pay being labeled on his paycheck as "Reg";

  vi. On October 10, 2018 (for the pay period ending October 7, 2018), Plaintiff was paid $400.00, with the type of pay being labeled on his paycheck as "ComRC."[1]

21. In addition to not paying Plaintiff the promised and agreed upon wages for all hours that he worked as an outside salesman, Defendants also failed to pay all commissions owed to Plaintiff during this period as well.

22. For example, as discussed *supra*, Plaintiff was promised 7% commission on Staffing Sales and Recruiting, a $500 commission on each New Staffing Client Origination, and 5% for Jomson Subcontracting Affiliate Program (JSAP) Fees; however, Plaintiff was rarely paid any of these commissions throughout his employment with Defendant as an outside salesman.

23. Plaintiff continuously asked Defendant Agarwal to pay him the wages owed to him under their agreement to which Defendant Agarwal responded that he would eventually pay him what he is owed (which he never did).

24. In or about late October/early November of 2018, Plaintiff stopped performing the role of an outside salesman and was transferred into the position of "Operations Manager" for what appeared to be another d/b/a of Defendant Entity, called "Raven Logistics."

25. Plaintiff was employed as Operations Manager for "Raven Logistics" until on or about January 31, 2019 when he was required to take a medical leave of absence.[2]

---

[1] This is only a small example of the fluctuation in wages that Plaintiff experienced following his initial eight weeks of employment with Defendants.

26. Even though Plaintiff's paychecks continued to indicate that he was being paid by Defendant Entity d/b/a Jomson Staffing Services, and Plaintiff was never paid by "Raven Logistics," Plaintiff was informed by Defendant Agarwal that any work he was performing between late October/early November of 2018 and January 31, 2019 was for "Raven Logistics."

27. When transferred into the position of Operations Manager for "Raven Logistics" Plaintiff was again promised verbally that he would be paid $20.00 per hour, plus a commission of $1.00/hour per driver.[3]

28. During the first approximate nine (9) weeks of his employment as Operations Manager with Defendant, Plaintiff was never paid any commission.

29. Plaintiff was only paid the promised commission of $1.00/ hour per driver on one occasion, at which point in time Defendant changed his commission structure to $.01 per package delivered (which resulted in much less commission to Plaintiff).

30. Following the change in his commission structure as Operations Manager of "Raven Logistics," there were some weeks in which Plaintiff was not paid any commission; however, the majority of the weeks during this time period, Plaintiff was earning less than $200.00 in commissions.

31. Furthermore, despite being told that he would be paid $20.00 per hour as Operations Manager of "Raven Logistics," Plaintiff's paychecks never reflected same.

32. In fact, Plaintiff was never paid more than $400.00 on a salary, fee, or hourly basis while employed with Defendants as an Operations Manager; instead, during this time

---

[2] Plaintiff has not returned to his employment since requiring a medical leave of absence and has been collecting short term disability.

[3] Defendants explained to Plaintiff that this meant he would be paid $1.00 per hour for every hour that a driver for "Raven Logistics" drove.

period, Plaintiff was always paid $400.00 (regardless of how many hours he worked) – which clearly made him a non-exempt employee, entitled to overtime wages.[4]

33. While employed as Operations Manager for "Raven Logistics," Plaintiff worked well over 40 hours a week, often times working up to (and over) 100 hours per week.

34. In addition to not paying Plaintiff $20.00 for every hour that he worked (as promised by Defendants) while employed as Operations Manager, Defendant also failed to pay Plaintiff any wages (including overtime wages) for any hours worked over 40 hours in one week - despite the fact that Plaintiff did not fall under any state or federal overtime exemptions.

35. Because Defendants refused to pay Plaintiff any wages for hours that he worked over 40 hours in one week (and therefore improperly withheld or deducted his pay), Plaintiff's pay reached the point where he was compensated below New Jersey state and federal minimum wage in many weeks.

36. Based on the foregoing, it is believed and therefore averred that Defendants have setup and perpetrated a system whereby they have deceived Plaintiff and intentionally failed to abide by state and federal wage and hour laws, which is evidenced by:

   a) Defendants failing to pay Plaintiff the rate that he was promised (which was memorialized in writing) while employed as a outside salesman;

   b) Defendants failing to pay Plaintiff the commissions that he was promised (which was reduced to writing) while employed as an outside salesman;

---

[4] *Karali v. Branch Banking & Tr. Co.*, 2018 U.S. Dist. LEXIS 167690, at *18-19 (D.N.J. Sep. 28, 2018)("Under the FLSA's administrative exemption, employees who work in a "bona fide. . . administrative. . . capacity" are exempt from overtime pay requirements. 29 U.S.C. § 213(a)(1). In order to qualify for the administrative exemption, three conditions must be met: (1) the employee must be compensated on a salary or fee basis at a rate of not less than $455 [*19] per week . . .")

c) Defendants failing to pay Plaintiff the rate he was promised while employed as an Operations Manager for "Raven Logistics";

d) Defendants failing to pay Plaintiff for all hours worked;

e) Defendants failing to pay Plaintiff time and one half for all hours that he worked in excess of 40 hours a week when he was working in a non-exempt position;

f) Defendants providing Plaintiff with payroll checks that have completely inaccurate hours and compensation information; and

g) Defendants mischaracterizing the type of pay that Plaintiff was receiving on his paychecks.

## COUNT I
### Violations of the New Jersey Wage Payment Law
### -Against Both Defendants-

37. The foregoing paragraphs are incorporated herein as if set forth in full.

38. At all times relevant herein, Defendants, have and continue to be "employer[s]" within the meaning of the NJ WPL.

39. Defendants and Plaintiff agreed that Plaintiff would be paid $20.00 per hour plus various commissions (described *supra*) in his position as an outside salesman. This agreement was made verbally and reduced to writing.

40. Defendants did in fact pay Plaintiff $20.00 per hour for 40 hours during the first approximate 8 weeks of his employment with Defendants as an outside sales man.

41. However, following the first approximate 8 weeks of his employment with Defendants as an outside salesman, Defendants ceased paying Plaintiff the agreed upon rate and either refused to pay Plaintiff at all or withheld a significant portion of his pay.

42. During the time period that Plaintiff was performing in the role of an outside salesman, Defendant also failed to pay Plaintiff the agreed upon commissions.

43. When Plaintiff transferred into the position of an Operations Manager for "Raven Logistics" he was again promised a pay rate of $20.00 per hour; however, Defendants refused to pay Plaintiff this rate and/or withheld a significant portion of his pay.

44. Plaintiff also believes and therefore avers that he was not paid the correct amount of commissions during the time period that he was employed as an Operations Manager with Defendants.

45. Based on the foregoing, it is believed and therefore averred that Defendants violated the NJ WPL and caused Plaintiff to suffer damages in the form of unpaid wages (including commissions).

## COUNT II
### New Jersey Wage and Hour Law (NJ "WHL")
### (Minimum Wage and Overtime Violations)[5]
### -Against Both Defendants-

46. The foregoing paragraphs are incorporated herein as if set forth in full.

47. At all times relevant herein, Defendants, have and continue to be "employer[s]" within the meaning of the NJ WHL.

48. At all times relevant herein, Plaintiff was a non-exempt "employee" within the meaning of the NJ WHL while he was employed with Defendants as an Operations Manager.

49. The NJ WHL requires covered employers, such as Defendants, to minimally compensate their "non-exempt" employees, such as Plaintiff, a minimum rate of $8.60 per hour in 2018 and $8.85 per hour in 2019.

50. The NJ WHL also requires covered employers, such as Defendants, to compensate their "non-exempt" employees at a rate of 1.5 times the employee's regular rate of

---

[5] Plaintiff does not assert minimum wage or overtime violations against Defendants under the NJ WHL for the time period that he was employed with Defendants as an outside salesman.

pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

51. While employed with Defendants as an Operations Manager, Plaintiff often times worked 100+ hours per week; however, Defendants failed to pay Plaintiff for any hours that he worked over 40 hours in one week.

52. Because Defendants refused to pay Plaintiff any wages for hours that he worked over 40 hours in one week, Plaintiff was often times compensated below New Jersey's minimum wage while employed as an Operations Manager.

53. As a result of Defendants' failure to pay Plaintiff minimum wage and the overtime compensation due him, Defendants willfully violated the NJ WHL and caused Plaintiff to suffer damages in the form of unpaid wages.

**COUNT III**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Minimum Wage and Overtime Violations)[6]**
**-Against Both Defendants-**

54. The foregoing paragraphs are incorporated herein as if set forth in full.

55. At all times relevant herein, Defendants, have and continue to be "employer[s]" within the meaning of the FLSA.

56. At all times relevant herein, Plaintiff was a non-exempt "employee" within the meaning of the FLSA while he was employed with Defendants as an Operations Manager.

57. The FLSA requires covered employers, such as Defendants, to minimally compensate their "non-exempt" employees, such as Plaintiff, a minimum rate of $7.25 per hour.

---

[6] Plaintiff does not assert minimum wage or overtime violations against Defendants under the FLSA for the time period that he was employed with Defendants as an outside salesman.

58. The FLSA also requires covered employers, such as Defendants, to compensate their "non-exempt" employees at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

59. While employed with Defendants as an Operations Manager, Plaintiff often times worked 100+ hours per week; however, Defendants failed to pay Plaintiff for any hours that he worked over 40 hours in one week.

60. Because Defendants refused to pay Plaintiff any wages for hours that he worked over 40 hours in one week, Plaintiff was often times compensated below the federal minimum wage while employed as an Operations Manager.

61. As a result of Defendants' failure to pay Plaintiff minimum wage and the overtime compensation due him, Defendants willfully violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid wages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings and any other owed compensation. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered legal violations at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future (and to compensate Plaintiff for lost use of income);

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 16, 2019